UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABBAS MANIA ABDOUSH

    Petitioner,                         CASE NO. 2:06-CV-13554
                                            HONORABLE DENISE PAGE HOOD

v.

ANDREW JACKSON

    Respondent.
_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

Abbas Mania Abdoush ("Petitioner"), presently confined at the Riverside Correctional Facility in Ionia, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, though counsel Michael D. Wiseman, in which he challenges his conviction for second-degree murder, M.C.L.A. 750.317. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a bench trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

Defendant's conviction arises from allegations that on January 25,

1

1998, at approximately 1:30 a.m., he intentionally struck the victim while driving a van, and that the injuries to the victim caused her subsequent death. Two witnesses observed the victim standing on Michigan Avenue in Detroit, talking to someone in a van. As the victim walked away from the van, the driver attempted to hit her. The van continued on Michigan Avenue, made a U-turn, came back toward the victim at a high rate of speed, hit the victim, "ran over her," and continued driving. One witness wrote down license plate number PLL 903. Upon arriving at the scene, the police found the victim lying face down in the street and gurgling. The police observed, inter alia, deep tire marks veering across Michigan Avenue in the direction of the victim's body, "yaw" marks indicating that a vehicle had made a sudden turn at a high rate of speed, and plastic debris scattered throughout the entire lane. No one could identify the driver of the van.

After emergency personnel resuscitated the victim and took other emergency measures, the victim was transported to the hospital in critical condition. When the victim arrived in emergency, she was comatose and had multiple injuries, including several facial lacerations, a mandible fracture, a zygoma fracture, a femur fracture, and abdominal injuries, including injuries to the small intestine, large intestine, bladder, mesentery, and the supporting structures of the intestines. Dr. Kurt Kravolich, who was qualified as a medical expert, testified that he was one of the victim's treating physicians. According to Dr. Kravolich, the victim underwent an exploratory laparotomy, a craniotomy, and a surgical repair of her femur fracture. Dr. Kravolich indicated that the hospital staff improperly inserted an intravenous line in the victim's groin area that created fluid in her abdomen, which caused him to operate on her abdomen. The victim was in stable condition following the surgeries.

On February 1, 1998, approximately four days after being struck by the van, the victim unexpectedly suffered a stroke and died. Dr. Kravolich indicated that the victim had regained consciousness on January 26, became weak on January 29, and was "clinically brain dead" by January 30. Dr. Kravolich indicated that the stroke was caused by damage to the internal carotid artery, i.e., "blocking of the artery." The victim's "dissection began at a point two centimeters above bifurcation of the common carotid artery which . . . put[] it very high in the neck behind the jaw." There were no external injuries apparent on the victim's neck. Dr. Kravolich testified that the dissection of the carotid

artery is consistent with the facial injuries the victim sustained.

Dr. Sawait Kanulen, the Wayne County chief medical examiner, testified as an expert in forensic pathology, and concluded that

> there were multiple injuries, especially in the face area, multiple fracture of the face and bones and injury also cut the right carotid artery. The right carotid artery was cut so there's no blood to the brain so half of the brain was dead and swelling and the deceased, she also has a broken leg and also abdominal injuries and then the cause of death was due to those multiple injuries, head and legs and then abdominal injuries.

Dr. Kanulen concluded that the cause of death was homicide, and that the victim's injuries, including the internal carotid artery dissection, were consistent with the victim being hit by a van. Dr. Abdul J. Alkhafaji, defendant's medical expert, agreed that the cause of death was a stroke as a result of a carotid artery injury. He testified that when arriving at the emergency room, the victim's injuries were not life threatening, that the victim had improved after receiving reparative procedures, and that she "possibly" could have survived with proper medical treatment. Dr. Alkhafaji essentially opined that the carotid artery injury could have occurred by the improper insertion of a needle into a blood vessel in the area of the carotid artery. He noted that carotid artery injuries are rare unless there is a fracture of the cervical spine and, here, there was no cervical spine injury that could have caused the dissection. Dr. Alkhafaji testified at length regarding the medical treatment the victim received, and concluded that the victim's death was the result of medical errors.

In March 1998, defendant was arrested after the police discovered that he was the driver of the van. Sadik Gabril testified that, in January 1998, he sold defendant a van. Kevin Hermz, defendant's co-worker who observed the sales transaction, testified that before trial, defendant called him and told him not to say anything about the van. Mohammed Al-Siamer testified that, on the day before the incident, defendant borrowed his license plate (PLL 903) to drive a recently purchased van. When the license plate was not returned in two hours as Al-Siamer expected, he unsuccessfully attempted to locate defendant around midnight. Between 6:00 and 7:00 a.m., Al-Siamer went to defendant's

> home, observed damage on the front of the van, blood on the ground, and blood on the van's front bumper and rim. According to Al-Siamer, defendant stated that, on the previous night, he had hit someone on Michigan Avenue when the person suddenly appeared in front of him. Defendant showed Al-Siamer blood on the van's headlight, fender, and wheel. In response to Al-Siamer's inquiry about defendant reporting the incident, defendant allegedly said that he did not think the person would die and that he was going to wash the van. Eventually, Al-Siamer told the police that he loaned his license plate to defendant, and that defendant stated that he hit a person. The police observed the van in front of defendant's house, and noted that the debris collected from the crime scene was consistent with the damage to the van.

*People v. Abdoush,* No. 256015, * 1-3 (Mich. Ct. App. Oct. 20, 2005).

Petitioner's conviction was affirmed on appeal. *Id.* The Michigan Supreme Court denied review of Petitioner's appeal. *People v. Abdoush,* 475 Mich. 867; 714 N.W.2d 298 (2006).

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. Petitioner was denied the constitutional right to have a meaningful opportunity to present a complete defense by the trial court's exclusion of a defense expert's opinion and testimony regarding cause of death, a necessary element of the charged offense at issue in the case.
>
> II. The state failed to prove Petitioner's guilt beyond a reasonable doubt where its evidence failed to prove a reasonable and direct causal connection between the injuries sustained by Ms. Brown in the accident and her ultimate death four days later.

## II. Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>	(1)	resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>	(2)	resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claim # 1.  The right to present a defense claim.**

Petitioner first contends that he was deprived of his right to raise a

5

meaningful defense when the trial court refused to qualify his expert witness, Dr. Alkhafaji, as an expert in trauma surgery, even though the trial court did qualify him as an expert in general surgery. The trial court later ruled that because Dr. Alkahafaji was not a pathologist, he was not qualified to offer an opinion as to whether the medical examiner's opinion as to the cause of death was correct.

The Michigan Court of Appeals held that the trial court did not abuse its discretion by refusing to qualify Dr. Alkhafaji as an expert in trauma surgery:

> Dr. Alkhafaji had testified that he was board certified in general surgery. He stated that his specialty was general surgery, not trauma surgery, and he was not certified in the area of trauma surgery. Dr. Alkhafaji could not answer with what frequency he had seen victims of major trauma cases since receiving his general surgery certification in 1972, or even within the last five years, noting that other surgeons in his office generally handle those cases. Furthermore, Dr. Alkhafaji was not a pathologist, or certified in that area. On this record, the trial court did not abuse its discretion when it ruled that Dr. Alkhafaji was not qualified to opine whether the medical examiner's conclusion on the cause of the victim's death was correct, or whether an autopsy was necessary to determine the cause of death.

*Abdoush,* Slip. Op. at * 7.

The Michigan Court of Appeals further ruled that the trial court judge's ruling did not deprive Petitioner of his constitutional right to present a defense, because the court permitted Dr. Alkhafaji to testify extensively about the victim's condition, treatment, and possible cause of death. *Id.* The Michigan Court of Appeals noted that since Dr. Alkhafaji testified that the victim would have probably died of her injuries if untreated, and that no medical personnel committed medical malpractice

6

in the treatment of the victim, it was highly improbable that the outcome of the trial would have been different had Dr. Alkhafaji been qualified as an expert in trauma surgery. *Id.,* * 7, n.5.

A state trial court's decision to exclude expert testimony is an exercise of judicial discretion, and habeas review does not ordinarily extend to state court rulings on the admissibility of evidence. *See Buell v. Mitchell,* 274 F.3d 337, 357 (6th Cir. 2001). Accordingly, to the extent that Petitioner is claiming an error of state law, he would not be entitled to habeas relief on this claim. *Id.*

Petitioner also claims that the trial court's refusal to qualify Dr. Alkhafaji as an expert in trauma surgery to permit him to challenge the medical examiner's opinion as to the cause of death, or to testify as to the need for an autopsy deprived him of the right to present a meaningful defense.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Crane v. Kentucky,* 476 U.S. 683, 690 (1986); *see also Washington v. Texas*, 388 U.S. 14, 19 (1967). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court has enunciated its "traditional reluctance to impose constitutional constraints on

7

ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (*quoting Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a defense unless they are "arbitrary or disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998)(*quoting Rock v. Arkansas*, 483 U.S. 44, 56 (1987)) (quotations removed).

    Here, the trial court's refusal to qualify Dr. Alkhafaji as an expert in trauma surgery or to permit Dr. Alkhafaji to testify as an expert concerning the need for an autopsy was not contrary to clearly established federal law so as to entitle Petitioner to habeas relief. First, under M.R.E. 702, trial courts in Michigan have wide discretion whether to qualify an expert witness. Evidentiary rules which set out criteria to be used to sort reliable expert testimony from unreliable expert testimony cannot be said to be arbitrary and, thus, do not violate the Sixth Amendment. *Barresi v. Maloney*, 273 F. Supp. 2d 144, 150-51 (D. Mass. 2003). The Supreme Court has approved the use of trial judges as gatekeepers under Federal Rule of Evidence 702, a fact that undermines any argument that M.R.E. 702 in this respect is unconstitutionally arbitrary. *Id.* (*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Here, the trial court

8

judge did not apply Michigan law on expert qualification arbitrarily, because the trial judge pointed to particular facts regarding the physician's education and training. "Such a considered determination defeats a finding that the judge's application of this rule was arbitrary." *Barresi,* 273 F. Supp. 2d at 151. Accordingly, the Court concludes that the trial court's refusal to qualify Dr. Alkhafaji as an expert in trauma surgery or as an expert qualified to offer an opinion as to the medical examiner's conclusions concerning the cause of death or the need for an autopsy did not violate the Petitioner's Sixth Amendment right to compulsory process. *Id.*

Second, Dr. Alkhafaji admitted that the victim would have probably died from her initial injuries if left untreated and further indicated that none of the treating physicians committed medical malpractice in this case. Because Dr. Alkhafaji's own testimony did not support a finding of medical malpractice, so as to sustain Petitioner's intervening cause defense, the trial court's refusal to qualify him as an expert in trauma surgery did not render Petitioner's trial unfair. *Garcia v. Mathes,* 474 F.3d 1014, 1017-18 (8th Cir. 2007); *see also Billingslea v. Jackson,* 83 Fed. Appx. 33, 43 (6th Cir. 2003) (noting that state trial court's refusal to give requested jury instruction on role of negligent medical care did not warrant federal habeas relief where state law did not permit medical negligence to mitigate petitioner's responsibility). Accordingly, Petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. The sufficiency of evidence claim.

Petitioner next claims that there was insufficient evidence presented to show that his act of hitting the victim with his van caused her death. A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable under 28 U.S.C. § 2254. *Malcum v. Burt,* 276 F. Supp. 2d 664, 686 (E.D. Mich. 2003). In doing so, this Court must afford the state court's findings of facts a presumption of correctness unless Petitioner can establish by clear and convincing evidence that the state court's factual determination was erroneous. *Williams v. White,* 183 F. Supp. 2d 969, 974 (E.D. Mich. 2002) (internal citations omitted). The *Jackson* standard applies to bench trials, as well as to jury trials. *Gilley v. Collins,* 968 F. 2d 465, 467 (5th Cir. 1992); *Gross v. Romanowski*, 2006 WL 3690923, *4 (E.D. Mich. Dec. 12, 2006).

Under Michigan law, if a third party's "independent act" "intervenes between the act of a criminal defendant and the harm to a victim, that act may only serve to cut off the defendant's criminal liability where the intervening act is

the sole cause of harm." *People v. Bailey*, 451 Mich. 657, 677; 549 N.W.2d 325 (1996). In the context of medical treatment, "evidence of grossly negligent treatment constitutes evidence of a sole, intervening cause of death." *Id.* at 679 However, the defense of intervening medical error is unavailable in Michigan as a defense to a defendant who has inflicted a mortal wound upon the victim. *People v. Thomas Williams*, 107 Mich. App 798, 802; 310 N.W.2d 246 (1981), *rev'd on other grounds* 413 Mich. 940 (1982).

In rejecting Petitioner's sufficiency of evidence claim, the Michigan Court of Appeals made the following factual findings and legal conclusions:

> Viewed in a light most favorable to the prosecution, a rational trier of fact could find that the victim's death was caused by defendant's act of hitting her with his van. The trial court, as the trier of fact, concluded that there "was a reasonable and direct causal connection between the injury and death and that intervening medical error, if there was any, is not available as a defense in this case because the wound was a mortal wound." (Appendix B, p 52.) Evidence was presented that defendant intentionally ran over the victim with his van while driving at a high rate of speed. The victim was lying facedown and struggling to breathe when emergency personnel arrived. As a result of being struck by defendant's van, the victim suffered multiple injuries, including facial fractures of the mandible and zygoma, other acute external and internal injuries to her face, a femur fracture, and injuries to the small and large intestines, bladder, and mesentery. The medical examiner, as well as Drs. Kravolich and Alkhafaji, indicated that the subsequent stroke that the victim suffered was a result of an internal carotid artery dissection.
>
> Both the medical examiner, Dr. Kanulen, and plaintiff's expert, Dr. Kravolich, testified that a carotid artery dissection injury was consistent with the type of massive facial injuries the victim sustained from being struck by a van, particularly the fractured mandible. Dr. Kravolich further testified that a carotid artery dissection occurs in 1 out of 150

automobile accidents. He explained that the force of the van pushed the victim's head backward and stretched the carotid artery to the extent that it caused a dissection separation of the artery. He noted that the force is applied to the head, not the neck so "the most common clinical picture in someone with a blunt carotid injury is facial, head and face injuries, not direct trauma to the neck." He indicated that, although the victim was seemingly improving from the initial injuries and trauma, the stretching caused the formation of a flap in the artery that was not externally visible, and which continued to grow and eventually "plug[ged] off" the artery. Dr. Kravolich opined that, even if medical personnel had discovered the carotid artery injury, it was surgically inaccessible because of the location of the artery, which was "at a high level up behind the jaw."

Further, as noted by the trial court, both defendant's medical expert and plaintiff's medical expert unequivocally testified that, without medical treatment, the victim would have died from the injuries sustained from being struck by defendant's van. In particular, Dr. Kravolich testified that the victim would not have survived had emergency personnel not inserted an endrotracheal tube to assist her breathing, and that her blood loss would have also been fatal if left untreated. He further testified that, even with medical assistance, the victim could not have survived the carotid artery injury. Although Dr. Alkhafaji opined that the victim's carotid artery injury might have occurred as a result of an intervening medical error, he acknowledged that a dissection could occur over time and eventually become a complete occlusion. Dr. Alkhafaji further indicated that the victim suffered "fatal" injuries as a result of being struck by a van and, if left untreated, would not have survived more than six to eight hours. From this testimony, viewed in a light most favorable to the prosecution, a rational trier of fact could reasonably infer that defendant inflicted a mortal wound on the victim, and that there is a reasonable and direct causal connection between his actions and the victim's death.

Furthermore, the evidence supports the trial court's conclusion that, even if the victim's injuries could be considered nonfatal, there was no evidence to support a finding that grossly erroneous medical treatment caused the victim's death. "If thoroughly and extraordinarily incompetent medical care killed the victim, it would break the chain of causation, absolving the defendant of criminal liability." But ordinary medical negligence is foreseeable and, therefore, does not cut off

12

criminal liability.

The defense asserted that medical personnel may have improperly placed a needle in the wall of a blood vessel that caused the carotid artery injury. Despite defendant's assertion of medical error, defendant's own expert testified that no one committed malpractice. Additionally, during his testimony, Dr. Kravolich indicated that the victim's dissection occurred behind the jaw, and explained where on the neck an intravenous puncture in that area would have been made. He then testified "with reasonable medical certainty," that a needle could not have caused the injury because "the tear was very high." In short, although defendant speculates that the victim's carotid artery dissection was caused by medical personnel improperly placing a needle in the area of the carotid artery, there was simply no evidence that "thoroughly and extraordinarily incompetent medical care killed the victim."

Defendant also contends that the evidence was insufficient because no autopsy was performed and therefore the "exact" cause of death cannot be determined. The medical examiner and both medical experts testified that the victim died from a carotid artery injury, which severed the blood supply to the brain. The medical examiner and plaintiff's expert testified that the victim's carotid artery injury was consistent with injuries caused by a pedestrian being hit with a van. The trier of fact was entitled to accept or reject any of the evidence presented, and "the prosecution need not negate every reasonable theory of innocence, but must only prove its own theory beyond a reasonable doubt in the face of whatever contradictory evidence is presented." In sum, the evidence was sufficient to sustain defendant's conviction for second-degree murder.

*People v. Abdoush,* Slip. Op. at * 4-6 (internal citations and footnotes omitted).

Here, the issue of the cause of the victim's death involved a dispute among experts. Although the prosecution and defense experts differed in their opinions regarding the cause of death, each expert's opinion was based on supporting medical data. The medical examiner and the prosecution's expert

witness testified that the victim died from a carotid artery injury, which severed the blood supply to the brain and that this injury was consistent with injuries caused by a pedestrian being hit with a van. Although Petitioner's expert witness reached a different conclusion, all three medical experts had an opportunity to present their medical data to the trier of fact, who chose to credit the findings of the medical examiner and the prosecution's expert witness as to the cause of death. As such, Petitioner's sufficiency of evidence claim involving the cause of death must fail. *Harding v. Bock,* 107 Fed. Appx. 471, 476-77 (6th Cir. 2004).

    The fact that no autopsy was ever performed on the victim would not render the evidence in this case insufficient to convict. There is no legal authority which supports Petitioner's assertion that a coroner's opinion is required to establish the cause of death in a homicide case. *United States v. Mayle,* 334 F.3d 552, 558 (6th Cir. 2003). In this case, the medical examiner did offer an opinion as the cause of death after reviewing the medical records. If there is no case law for the proposition that a coroner's opinion is necessary to establish the cause of death in a homicide case, then certainly an autopsy is not an absolute necessity to establish the victim's cause of death either.

    Likewise, although there was conflicting expert testimony about the appropriateness of the victim's medical treatment, both the prosecution and defense experts indicated that none of the medical personnel committed medical

14

malpractice in this case. Because there was no evidence presented that "throughly and extraordinarily incompetent medical care killed the victim," the Michigan Court of Appeals' finding that there was sufficient evidence to convict Petitioner was not an unreasonable application of *Jackson. See Brust v. Money* 100 Fed. Appx. 437, 439 (6th Cir. 2004). Accordingly, Petitioner is not entitled to habeas relief on his second claim.

## IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

                                        s/ DENISE PAGE HOOD
                                        **HON. DENISE PAGE HOOD**
                                        UNITED STATES DISTRICT COURT

DATED: December 19, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 19, 2007, by electronic and/or ordinary mail.

                                        S/William F. Lewis
                                        Case Manager